UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

| | |
|---|---|
| AJY INTERNATIONAL, INC., <br><br> Plaintiff, <br><br> v. <br><br> PALDO CO., LTD., <br><br> Defendant. | Case No. 17-cv-00744-VC (LB) <br><br> **AMENDED DISCOVERY ORDER** <br> [Re: ECF No. 80–81] |

## INTRODUCTION

This is a discovery dispute. The underlying lawsuit is centrally one for breach of contract; it grows from the breakdown of a food distributorship.[1] Plaintiff AJY International, Inc. was a U.S. distributor of food products made by defendant Paldo Co., Ltd. The parties both claim (among other things) that the other breached the distributorship agreement. This discovery dispute involves Paldo's counterclaims against AJY and its president, Kue Yeup Ji; it also implicates AJY's lost-income claim for damages. For present purposes, it is enough to note two specific components of Paldo's counterclaims. First, Paldo alleges that AJY and Mr. Ji are alter egos, so

---

[1] *See generally* 2nd Am. Compl. – ECF No. 72; Answer to 2nd Am. Compl. – ECF No. 75; Jt. Case-Mgmt. Stmt. – ECF No. 63 at 3–8. Record citations refer to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of documents.

AMENDED ORDER – No. 17-cv-00744-VC

United States District Court
Northern District of California

that Mr. Ji should be held personally responsible for AJY's liabilities.[2] Second, Paldo seeks to extend a constructive trust over both the goods that it sold to AJY for distribution, and the proceeds that AJY derived from selling those goods.[3]

According to his attorney, Mr. Ji "has control over all AJY's documents."[4] Furthermore, the disputed requests to AJY and Mr. Ji cover the same topics. For simplicity, then, this order often refers to AJY and Mr. Ji as the "plaintiffs." The parties' discovery dispute is spread across two joint-discovery letters and concerns various Requests for Production that Paldo has made.[5]

## ANALYSIS

### 1. Financial Condition — Assets and Liabilities

**1.1 The Parties' Dispute**

The parties' first issue mostly asks whether Paldo can discover information revealing AJY's and Mr. Ji's financial condition — their assets and liabilities. This issue involves Paldo's RFPs ## 24–26, 30–38, 41, 53–54, and 58. Paldo says that this information is relevant to its alter-ego allegations and its constructive-trust claim (and adds that specific RFPs relate (33–35, 37, and 53–54) relate to AJY's damages claims too). The plaintiffs deny this. They say that their financial condition has "no bearing" on any party's "claims or defenses." This includes Paldo's constructive-trust counterclaim, the plaintiffs say, because that claim can reach only "properties wrongfully withheld by AJY, not AJY's own assets and properties." They also argue that inquiring into their financial condition would violate their right to privacy under the California constitution.

---

[2] Answer to 2nd Am. Compl. – ECF No. 75 at 22–31 (¶¶ 3–6).

[3] *Id.* at 36–41 (¶¶ 42–46).

[4] ECF No. 81 at 4.

[5] *See generally* ECF Nos. 80–81.

AMENDED ORDER – No. 17-cv-00744-VC     2

**1.2 Topical Holdings**

    **1.2.1   This material is mostly discoverable**

The court comes down somewhere between the parties. Paldo's requests mostly seek discoverable information. The plaintiffs' most generic defense — in essence, that financial-condition discovery is not generally relevant to liability, and so is usually disallowed — is unavailing. The cases they cite cast doubt on the propriety of assets discovery when it is sought for the generic purpose of determining the defendant's ability to pay an eventual award. *See Chenoweth v. Schaaf*, 98 F.R.D. 587, 588–90 (W.D. Pa. 1983); *E.E.O.C. v. Giumarra Vineyards Corp.*, 2012 WL 393333, *3 (E.D. Cal. Feb. 6, 2012). That financial-condition discovery is usually not allowed for that purpose is uncontroversial.

Here, however, the state of the plaintiffs' assets and liabilities is tied to specific, substantive, joined issues. More precisely, evidence of AJY's and Mr. Ji's assets and liabilities may impact Paldo's alter-ego allegations[6]; and Paldo's constructive-trust claim, for its part, puts into question whether its products were sold and converted into other assets. The latter is the question of "tracing proceeds" in constructive-trust law, and it merits the following, slightly more specific observations.

    **1.2.2   Constructive trusts and proceeds**

To the extent that the plaintiffs sold Paldo's products and converted them into other assets (money or subsequent investments), documents that may reveal such conversions are plainly discoverable. It is a rudiment of constructive-trust law that the aggrieved constructive beneficiary (here, Paldo) can ask the court to extend a constructive trust over, not only the original items, but also any proceeds that the constructive trustee (the plaintiffs) gained from disposing of those items. *See, e.g., Heckmann v. Ahmanson*, 168 Cal. App. 3d 119, 136 (1985) ("[T]he remedy of

---

[6] Paldo's counterclaim makes basic familiar alter-ego allegations. That counterclaim alleges, for example, that AJY was "inadequately capitalized"; that Mr. Ji "diverted [AJY's] corporate assets"; and that AJY and Mr. Ji "ignored corporate formalities" and "commingled their assets." (2nd Am. Answer – ECF No. 75 at 22–23( ¶¶ 4–5)). These allegations will inform the court's specific holdings. *See* Part 1.3, *infra*.

1 constructive trust is defeated if plaintiffs are unable to trace the trust property into its succeeding

2 transfigurements.") (citing authorities).

Here, in its constructive-trust counterclaim, Paldo expressly pleads its right to such proceeds.[7] If Paldo prevails on that claim, it will be able to recover, not only the products that it originally sold the plaintiffs, but also the proceeds gained when those goods were sold, and anything that was bought with that money. To trace its products through those "succeeding transfigurements," though, it must have the appropriate discovery.

### 1.2.3 Privacy

The California-constitutional right to privacy does not bar Paldo from discovering the requested information. One illustrative case will show this. In *Valley Bank of Nevada v. Superior Court of San Joaquin County*, 15 Cal.3d 652 (1975), on first impression, California's high court allowed discovery of bank customers' "allegedly confidential information." *Id.* at 655–59. In so doing, the *Valley Bank* court considered the effect of the state-constitutional privacy right — and decided that it did not bar the requested discovery. *Id.*

Several points may be made. All of them show that the plaintiffs in this case cannot invoke the state privacy right to avoid discovery. First, in *Valley Bank*, the defendant bank was being asked to turn over its customers' information — not its own. One might fairly expect the courts to apply the constitutional privacy right more stringently when it is being used to defend absent third parties. Something like a loose *a fortiori* principle then suggests that, if state-constitutional privacy did not bar the production of the bank customers' information in *Valley Bank*, then — all else being equal — it does not bar the production of the plaintiffs' own financial information here. Furthermore, as numerous California cases instruct, the state-constitutional right to privacy is "balanced" against the need for legitimate discovery. *See, e.g., id.* The plaintiffs here do not attempt such a balancing analysis. They merely touch the privacy right like an amulet. But — as the very existence of a

---

[7] *E.g.,* ECF No. 75 at 36 (¶ 43).

AMENDED ORDER – No. 17-cv-00744-VC  4

balancing test confirms — there is no absolute privacy right, whose mere invocation will snuff out civil discovery. Thus the unanimous, in-bank California Supreme Court could write:

> [W]e readily acknowledge that relevant bank customer information should not be wholly privileged and insulated from scrutiny by civil litigants. The Legislature has not so directed, and in expressing a contrary position we said in *In re Lifschutz* (1970) 2 Cal.3d 415, 425, "In order to facilitate the ascertainment of truth and the just resolution of legal claims, the state clearly exerts a justifiable interest in requiring a businessman to disclose communications, confidential or otherwise, relevant to pending litigation."

*Valley Bank* at 657–58. (parallel citations omitted).

An additional, independent flaw infects the plaintiffs' privacy argument — so far as it concerns AJY specifically. Corporations do not enjoy the California-constitutional privacy right. *E.g., Valdez v. Travelers Indemn. Co. of Conn.*, 2013 WL 3989583, *6 (N.D. Cal. Aug. 2, 2013); *SCC Acquisitions, Inc. v. Superior Court of Orange County*, 243 Cal. App. 4th 741, 755–56 (2015) ("We conclude [that] corporations do not have a right of privacy protected by the California Constitution. . . . [T]he constitutional provision simply does not apply to corporations.") (footnote and quotation omitted).

Last in this vein, the parties have entered into a general protective order to safeguard confidential information that is produced in this case.[8] That should allay any privacy concerns.

### 1.3 Specific Holdings by RFP

With these topical considerations in mind, the court reaches the following specific holdings on the disputed RFPs. Paldo mostly asks for information that can be discovered — particularly given its alter-ego allegations and constructive-trust counterclaim, but also given AYJ's lost-profits damages claim. The following requests are thus permitted as written: RFP ## 24–26, 30, 31–38, 41, 53–54. RFP #58 is disallowed. It is unclear what is meant by the "attribution of conduct by AJY before it legally existed." And it is equally unclear what issue this material pertains to.

---

[8] ECF No. 74.

**2. Tax Returns, Bank Statements, Balance Sheets**

AJY next objects to Paldo's request that it produce its tax returns, bank statements, and balance sheets.[9] (AJY has listed the disputed documents on a privilege log.[10]) It argues that the material need not be produced because it is both irrelevant and privileged. The court disagrees. Other courts in sufficiently similar contexts have reliably rejected the arguments that AJY makes. Those arguments are non-starters in this case, too; and, for the reasons given below, the court holds that the information is subject to discovery.

**2.1 The Material is Relevant**

The information that Paldo seeks is relevant to the parties' competing claims for lost profits[11] and to Paldo's alter-ego allegations. *See, e.g., Valdez*, 2013 WL 3989583 at \*4. The *Valdez* court held that, by claiming "lost . . . profits," "loss of [statutory] benefits," and "other consequential damages," the plaintiffs had "placed their financial condition at issue." *Id.* This made their "financial statements, tax returns," and other "related documents" — such as "profits and loss statements, bank account statements, loan and line of credit statements" — "relevant for purposes of discovery." *Id.* at \*3–4. This court thinks that the competing lost-profits allegations make AJY's tax returns, bank statements, and balance sheets equally relevant here.[12]

The requested information is also potentially relevant to Paldo's alter-ego allegations. This, on the same reasoning that the court gave in Part 1, *supra*. *See Del Campo v. Am. Corrective Counseling Servs., Inc.*, 2008 WL 4858502, \*5 (N.D. Cal. Nov. 10, 2008) ("The financial

---

[9] ECF No. 80 at 2–4.

[10] ECF No. 80-3.

[11] *See* 2nd Am. Compl. – ECF No. 72 at 5–6, 12–13 (¶¶ 21, 32–33, 61, prayer items 4–5); Answer to 2nd Am. Compl. – ECF No. 75 at 41–42 (¶¶ 46, prayer item 6).

[12] The court does not suggest that the mere assertion of a damages claim will always make a plaintiff's financial condition relevant for discovery. Pure physical-injury torts, for example, may not entail that conclusion. The court holds only that, in this case, which rests centrally upon product sales, the profits associated with those sales, and the fate of sale proceeds (*see, supra*, note 11), the plaintiff's financial condition is sufficiently relevant to open the requested information to discovery.

AMENDED ORDER – No. 17-cv-00744-VC        6

documents Plaintiffs seek are relevant to determine whether the entity Defendants were merely alter egos of [the individual defendants].").

The court does not mean to suggest that this material may not be relevant to other issues.

### 2.2 The (Phantom?) Tax-Return Privilege

Even if the material is relevant, AJY next argues, it is privileged. Again, the court is not persuaded. With respect to the requested tax returns (items 18–41 on the privilege log), AJY argues that they are shielded from discovery by a California tax-return privilege. It locates this privilege in California Revenue and Taxation Code § 19282 and one of the cases applying this statute, *Wilson v. Superior Court of Sacramento County*, 63 Cal. App. 3d 825 (1976).[13]

This supposed privilege does not bar discovery of the material. Or, rather, the alleged privilege does not appear to exist.

The California tax-return privilege was derived from a provision in § 19282 that made it a misdemeanor for the Franchise Tax Board to disclose a tax return. *See, e.g., Schnabel v. Superior Court of Orange County*, 5 Cal. 4th 704, 719 (1993) (citing *Webb v. Standard Oil Co.*, 49 Cal. 2d 509, 512 (1957)). That provision was repealed from the statute in 1993; it is no longer part of § 19282. *See* Cal. Rev. & Tax. Code § 19282. AJY takes no account of this development. (Nor does Paldo — or, for that matter, some post-1993 cases that discuss the doubtful privilege. *See Fortunato v. Superior Court,* 114 Cal. App. 4th 475, 489 (2003).) With its statutory anchor removed, it is far from clear that the tax-return privilege continues to exist.

Even as it formerly existed, though, the privilege would not have barred Paldo's requested discovery. The privilege was "not absolute." *E.g., Schnabel*, 5 Cal. 4th at 721. It could be overcome in several situations. *See id.* One being where the needs of civil discovery compelled the conclusion that the privilege had been waived or otherwise surmounted. *See id.*; *see also Valdez*, 2013 WL 3989583 at *5 (plaintiff's lost-profits claim effected waiver of privilege, or gave "sufficient basis for compelling the production of the tax returns") (citing cases). Particularly

---

[13] ECF No. 80-3 at 5–10.

AMENDED ORDER – No. 17-cv-00744-VC      7

where the requested information is covered by a protective order, as it would be here, the claimed privilege would not exempt the material from discovery.

### 2.3 Privacy — Bank Statements and Balance Sheets

Finally in this area, in withholding the requested bank statements and balance sheets (items 42–123 on the privilege log), AJY invokes its "Privacy rights" under the California constitution.[14]

This objection is without merit. Again, corporations do not enjoy this right. *E.g., Valdez*, 2013 WL 3989583 at *6; *SCC Acquisitions,* 243 Cal. App. 4th at 755–56. Furthermore, the legitimate needs of discovery in this case would outweigh the privacy interest. *See, e.g., Valley Bank*, 15 Cal.3d at 655–59. And, again, the protective order provides a backstop against which AJY's privacy arguments fail.[15]

### 3. Further Identifying Withheld Material

The parties' next dispute is vaguer. Here, Paldo complains that AJY and Mr. Ji have withheld additional documents that may respond to Paldo's requests, but have not adequately identified those documents so that their responsiveness can be assessed.[16] AJY responds that it has sufficiently described all the material that it has withheld (as privileged or non-responsive) "in [its] Initial Disclosure and [in] the privilege log."[17] Beyond the financial information covered by the privilege log (which the court has already addressed), the withheld material seems to also include Mr. Ji's "income and asset information," his tax returns, his "personal" information, and "corporate resolutions relating to AJY's assets and transactions between AJY and Mr. Ji."[18] The

---

[14] ECF No. 80-3 at 10–20.

[15] The court expresses no opinion on the items in AJY's privilege log that are allegedly protected by the attorney-client privilege or the attorney-work-product doctrine. *See* (ECF No. 80-3 at 2–5 [items 1–17].) The parties' joint letter doesn't address these issues.

[16] ECF No. 80 at 4–5.

[17] *Id.* at 5.

[18] *See id.* at 4–5.

plaintiffs argue that they need not more specifically identify the items that they have declined to produce.

The court has essentially two responses to this. First, if the withheld information is within the topical scope of material that this order has already deemed discoverable, then of course the plaintiffs must produce it. This includes all the financial information that the court has deemed relevant and subject to discovery; and it applies to both AJY and Mr. Ji. Second, while the court understands the plaintiffs' argument, no party has the unilateral right to finally decide which information is or is not responsive. Most of the time, of course, the court can do little or nothing in the face of a party's averment that it has produced everything it has that responds to a given request, and that no further material exists. But, if there are known documents that are being withheld, then the requesting party has some right to have the court (and not just its adversary) finally decide whether that material can be kept back. If the parties cannot agree on further identifying the withheld information, and mutually deciding whether it is responsive, then they may submit the challenged material to the court for inspection and decision.

### 4. Information Specific to Mr. Ji

The parties' last disagreement involves information related specifically to Mr. Ji (rather than to AJY).[19] Here, again, Paldo has asked for, and Mr. Ji has refused to produce, certain material. These requests mostly travel the same ground as the requests to AJY. (They thus mostly ask for Mr. Ji's financial information.) Mr. Ji has objected to these requests on grounds that this order has already addressed. That is to say, he argues that the requested material is irrelevant, is disproportionate to the needs of the case, violates his state-constitutional right to privacy, and is barred by California's tax-return privilege.[20]

---

[19] ECF No. 81.

[20] *See id.* at 4–5.

AMENDED ORDER – No. 17-cv-00744-VC          9

The court has already addressed these issues. The decisions above — on relevance, proportion, privacy, and the tax-return privilege — apply with no important change to Mr. Ji. None of these objections defeats Paldo's requests.

Mr. Ji need not produce any material that AJY has already produced — or that it will produce to comply with this order. (Paldo recognizes that its requests to AJY and Mr. Ji overlap. It thus agrees that, "Mr. Ji need not produce documents that AJY has produced."[21]) Mr. Ji need produce only responsive material that pertains to himself (regarding Paldo's counterclaims) and AJY's claim against Paldo.

Mr. Ji identifies three requests (RFPs ## 19, 24, and 26) that he says do not duplicate requests made to AJY. Request #19 asks for ""all documents relating to and communications about the terms of any agreement between [Mr. Ji] and Paldo."[22] Mr. Ji argues (in sum) that any such material is too remote from the contractual dispute (between Paldo and AJY) that is at the heart of this lawsuit, so that this request is disproportionate to the needs of this case under Rule 26(b)(1).[23] The court thinks that the request is appropriate. Mr. Ji is himself a counterclaim defendant. It is conceivable — though it may be near the margins of the plausible — that agreements between him personally and Paldo will yield case-relevant information.

In its initial order, the court said that Paldo should be able to pull this information from its own records. It then ordered the following: "If Mr. Ji has documents or communications concerning his own agreements with Paldo, that for some reason do not directly involve Paldo (*i.e.,* documents and communications between Mr. Ji and third parties), then he must produce those. He need not produce documents or communications that are topically responsive to this request, but to which Paldo was a party. Again, Paldo should have that material."[24] The court in part was trying to manage burden: Mr. Ji's counsel represented at the hearing that it had made all documents available for inspection and had complied with all discovery requests. But in its post-hearing

---

[21] *Id.* at 5.

[22] *Id.* at 4 (capital letters removed).

[23] *Id.* at 5.

[24] ECF No. 86 at 10.

AMENDED ORDER – No. 17-cv-00744-VC 10

submission, Paldo said that it was not aware of any agreements and does not have any agreements, and it concludes that Mr. Ji should produce them if any exist.[25] Under the circumstances, the court orders (more plainly) that if Mr. Ji has responsive documents, he must produce them, and if he does not, he must say so to Paldo.

Finally, Requests ##24 and 26 ask for documents that will suffice to identify Mr. Ji's "assets or property," including his "bank accounts."[26] To these requests Mr. Ji raises objections that the court has already found deficient. He argues that this material is irrelevant "to any claim or defense in this case" — including Paldo's alter-ego allegations. The court disagrees. As it has already decided, the court thinks that such material could very well yield information that is relevant to the alter-ego allegations. Though, again, the court does not mean to suggest that that is the only issue to which such requests might prove relevant.

* * *

## CONCLUSION

The court thus largely agrees with Paldo. Discovery is ordered according to the preceding discussion. This disposes of ECF Nos. 80 and 81.[27]

**IT IS SO ORDERED.**

Dated: August 19, 2017

LAUREL BEELER
United States Magistrate Judge

---

[25] ECF No. 87 at 4.

[26] *See id.*

[27] At the August 17, 2017 hearing on this matter, the plaintiffs stated that they have produced all the responsive material that they possess — or have made that material available for inspection and copying. Assuming that that is the case, this order may at least serve to define and memorialize the parties' respective discovery rights.